Jephunneh LAWRENCE, Petitioner,

v.

**DISTRICT OF COLUMBIA BOARD OF ELECTIONS & ETHICS, Respondent.**

**Marion Barry, Jr., Intervenor.**

**Nos. 92–AA–805, 92–AA–871.**

District of Columbia Court of Appeals.

Argued July 20, 1992.
Decided July 28, 1992.

Winfred R. Mundle, Silver Spring, Md., for petitioner.

William H. Lewis, Washington, D.C., for respondent.

Before STEADMAN, FARRELL and WAGNER, Associate Judges.

STEADMAN, Associate Judge:

Before us for expedited review is a decision of the Board of Elections and Ethics that Marion Barry, Jr., a prospective candidate for a seat on the Council of the District of Columbia from Ward 8, is not disqualified by the one-year residency provision of the District of Columbia Self-Government and Governmental Reorganization Act, codified at D.C.Code § 1–225 (1987). Petitioner has filed two separate petitions with us in connection with this matter. We must dismiss the first petition for want of jurisdiction. The second petition, taken from the decision of the Board rejecting petitioner's challenge following the filing of the nominating petition, is properly before us. We affirm the Board's decision rejecting the challenge.

I

We deal first with the dismissed petition, because in doing so we explicate the basis for our jurisdiction to hear the second petition. On June 10, 1992, petitioner requested an opinion of the Board whether Mr. Barry, who in April 1992 completed a six-month federal sentence served in prison facilities in Virginia and Pennsylvania, met the requirement that he "has resided and been domiciled in the District for 1 year immediately preceding" the day of election. D.C.Code § 1–225 (1987). The General Counsel of the Board rendered a "preliminary assessment" that Mr. Barry was qual-

ified. Petitioner thereupon sought an "immediate official opinion" from the Board. The Board held a hearing on June 30, 1992, and on July 1, 1992, issued an order denying petitioner's challenge to Mr. Barry's qualifications on the residency ground. Petitioner then filed a petition for review with this court, on which we heard oral argument on July 20, 1992.

We have been cited to no provision of law that expressly grants this court jurisdiction to hear a direct appeal from this action of the Board, and we know of none.[1] Under D.C.Code § 11–722 (1989), our general jurisdiction to directly review administrative orders and decisions is confined to that authorized by the District of Columbia Administrative Procedure Act. D.C.Code §§ 1–1501 to 1–1510 (1987). Under that act, we may entertain petitions from a decision in a "contested case." § 1–1510(a). "Contested cases" are defined in § 1–1502(8) as a proceeding in which legal rights, duties, or privileges are "required by any law ... or by constitutional right, to be determined after a hearing" before the agency. See *Communication Workers of America, Local 2336 v. District of Columbia Taxicab Comm'n*, 542 A.2d 1221, 1222–23 (D.C.1988). No law or constitutional right gave petitioner any right to a hearing before the Board on his request for an opinion.

It is also suggested that jurisdiction may lie under § 1–1306(g). That subsection provides that notwithstanding any contrary requirement of the Administrative Procedure Act, the Board may hear any case by 1–member panels, and that an appeal from a decision of any such 1–member panel may be taken to either the full Board or to the District of Columbia Court of Appeals. We read this subsection as a procedural one simply to authorize the use of 1–member panels where otherwise the full Board would have to sit, and not to expand the substantive jurisdiction of this court over direct agency appeals. The subsection by its terms applies only to any

---

1. Under D.C.Code § 1–1435(c)(2) (1987), an "advisory opinion," issued in accordance with Board rules, is "reviewable in the Superior Court of the District of Columbia by any interested person adversely affected thereby."

"case" brought before the Board. This reading is further confirmed by a perusal of the entire section and its provisions for appeals from a 1–member panel to the full Board. The final sentence provides: "A final decision of the full Board, relating to an appeal brought to it from a 1 member panel, shall be appealable to the District of Columbia Court of Appeals in the same manner *and to the same extent* as all other final decisions of the Board." *Id.* (emphasis supplied).

A grant of a direct appeal to this court at the preliminary point when the first petition was filed here would distort the statutory and regulatory process, as well as encourage piece-meal and possibly moot appeals. When petitioner sought the opinion from the Board and the Board acted, nominating petitions for Mr. Barry were still in circulation. None had yet been filed.[2] Under the Board's regulations, it is at the time of the filing of a nominating petition that a "Declaration of Candidacy and Affidavit of Qualifications" must also be filed, at the latest. 3 DCMR § 602.1 (1990). Within three working days after the deadline for filing nominating petitions, the Executive Director of the Board or his designee makes a preliminary determination of eligibility. *Id.* § 602.4.[3] Also on the third day the nominating petition must be posted for a ten-day period. Within that period, any registered qualified voter may challenge the validity of any petition. The Board receives evidence in support of and in opposition to the challenge and determines its validity. Within three days after the announcement of the Board's decision, either the challenger or the nominee may apply to this court for an expedited review. D.C.Code § 1–1312(*o*) (1987). By only then

providing for direct appellate review of challenges to a candidate, this statutory and regulatory scheme sensibly precludes judicial review of challenges brought at a point at which it may still be uncertain whether the prospective candidate successfully will complete the formal steps toward becoming a candidate or what the full range of current challenges may be.

Thus, we read broadly the provision of § 1–1312(*o*) allowing challenges to "the validity" of any petition as establishing a mechanism for review of challenges to the placing of a proposed nominee on the ballot both as to qualifications and to procedural formalities. In this manner, all challenges then formulated can be considered contemporaneously by this court.[4] Because the first petition sought review prior to this point and apart from § 1–1312(*o*), we lack jurisdiction to consider it, and it is hereby dismissed.

## II

We turn now to the substantive challenge to Mr. Barry's residency qualification. Following oral argument before this court on July 20, 1992, petitioner timely filed the requisite written challenge to Mr. Barry's nominating petition, which had been posted ten days previously, pursuant to D.C.Code § 1–1312(*o*) (1987). The following day, July 21, 1992, the Board held a hearing, at which it accepted petitioner's motion to incorporate by reference the record of the June 30, 1992 hearing. The Board denied the challenge and incorporated by reference its order of July 1, 1992. Petitioner promptly again sought our re-

---

2. From the record, it appears that a statement of candidacy and related papers had been filed with the Office of Campaign Finance. *See* D.C.Code § 1–1415 (1987). Acceptance of such reports and statements "shall not be construed as a determination by the Board that the candidate is eligible for the particular office which he or she seeks." 3 DCMR § 600.1 (1990).

3. If the decision is adverse, the disqualified candidate may seek an immediate hearing before the Board. *Id.* § 603.1.

4. The Board's regulations leave open the possibility of future challenges. "The preliminary determination of eligibility shall in no way be deemed to preclude further inquiry into or challenge to the eligibility of an individual for candidacy or office made prior to the certification of election results by the Board and based upon evidence which was not known to the Board at the time of the preliminary determination or upon evidence of changed circumstances." 3 DCMR § 602.7 (1990). *See Williams–Godfrey v. District of Columbia Bd. of Elections & Ethics*, 570 A.2d 737 (D.C.1990).

view.[5]

■ The District of Columbia Self-Government and Governmental Reorganization Act, the basic document establishing the present structure of the District of Columbia government, contains a number of provisions concerning qualifications for holding office. The provision relevant to the dispute before us is section 402, codified at D.C.Code § 1–225, which in relevant part provides:

No person shall hold the office of member of the Council … unless he (a) is a qualified elector, (b) is domiciled in the District and if he is nominated for election from a particular ward, resides in the ward from which he is nominated, and (c) has resided and been domiciled in the District for one year immediately preceding the day on which the general or special election for such office is to be held. …

Petitioner concedes that Mr. Barry meets the domicile requirement but argues that he fails to meet the requirement that he "has resided" in the District for the one-year period immediately preceding the election date because of his absence from the District by reason of his serving a six-month federal sentence in Virginia and Pennsylvania until April of this year.

At the outset, we are mindful of the fact that any decision in this area affects not only the prospective candidate but also the voters as a whole, since a meaningful part of the right to vote is to vote for a candidate of one's choice. *See Williams–Godfrey v. District of Columbia Bd. of Elections & Ethics, supra* note 4, 570 A.2d at 739 n. 4 ("Though any individual's personal right to candidacy is not itself a fundamental right, *see Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), a critical ingredient of the electorate's ability to vote effectively is choice among the can-

didates with demonstrated support") (quoting *Consumer Party v. Davis,* 633 F.Supp. 877, 885 n. 8 (E.D.Pa.1986)). As we have said in interpreting another provision of the election laws, "[i]n attempting to discern intent … this court is mindful that a prime purpose of Congress in formulating the District of Columbia Elections law was to keep the franchise open to as many people as possible." *Gollin v. District of Columbia Bd. of Elections & Ethics,* 359 A.2d 590, 595 (D.C.1976). Further, "[t]he fundamental nature of the right involved [to vote] persuades us that construction of the statute in favor of the franchise is the course that we must follow since there is no compelling reason to do otherwise." *Kamins v. Board of Elections for the District of Columbia,* 324 A.2d 187, 192 (D.C. 1974).[6] These considerations suggest that qualifications for candidacy be interpreted in an inclusive spirit.

■ Many years ago, we established that, in a general sense, a "residence must be a fixed and permanent abode or dwelling place for the time being and not a mere 'temporary locality of existence.' It does not have to be permanent in the strict sense of the word since permanency of abode cannot be known without the gift of prophecy; but it must be more than a place of mere sojourning or transient visiting." *D'Elia & Marks Co. v. Lyon,* 31 A.2d 647, 648 (D.C.Mun.App.1943) (quoting *Barney v. Oelrichs,* 138 U.S. 529, 533, 11 S.Ct. 414, 415, 34 L.Ed. 1037 (1891)).[7] Inherent in the concept are the expectation and likelihood of absences, perhaps of some duration, from this "fixed and permanent abode," and the relevance of intent and voluntariness. Thus, "[i]t is generally accepted that a person entering into one of the military services retains his domicile or residence in the state from which he entered the service

---

**5.** It was stipulated that the record in the first appeal would constitute the record in the second appeal and that the second appeal should be decided without further argument.

**6.** We had expressed the same principle in the pre-Home Rule case of *Curtis v. Bindeman,* 261 A.2d 515, 517 (D.C.1970), where we said: "The [voting] statute should be liberally construed so

as not to deny innocent voters their right to vote, or to upset an election for technical reasons."

**7.** In this case, we explicitly recognized that we were dealing with the concept of residence as opposed to domicile. *Id.* at 648.

unless there is evidence of intent on his part to effect a change therein." *Rudd v. Rudd*, 278 A.2d 120, 121 (D.C.1971).

■ Given the usefulness of these general concepts, still it is recognized that " '[r]esidence' is not a term of fixed legal definition but takes on shades of meaning according to the context in which it is found." *District of Columbia v. H.J.B.*, 359 A.2d 285, 290 (D.C.1976). Therefore we, as did the Board, take special note of the action of the Council in 1982 to provide a definition of residence in the election laws, and in particular, D.C.Code § 1–1302(16)(E) (1987), which provides in pertinent part:

> No person shall be deemed to have gained or lost a residence by reason of absence while employed in the service of the District or the United States governments, while a student at any institution of learning, while kept at any institution at public expense, or while absent from the District with the intent to have the District remain his or her residence.

Petitioner argues that this definition is not relevant to the matter before us since, he claims, it relates to residence for voting purposes and cannot be deemed to affect the requirement in § 1–225.[8] Even if this is so in strict legal terms, as to which we express no opinion,[9] we think it provides a helpful and relevant gloss within which to interpret the requirement of § 1–225.[10]

■ We perceive no ground to set aside the Board's decision, on the record before it, that Mr. Barry's candidacy was not precluded by § 1–225. It is not challenged that over the years, Mr. Barry's contacts with the District have been both long and deep, including three terms as the Mayor. There is no evidence in the record to show that during his involuntary physical absence from the District, he expressed any intent not to return to the District, and he did indeed return to the District upon his release from prison. Likewise, there is no evidence that he changed his voter registration or failed to pay District taxes.[11] In sum, we are satisfied that within the legal principles set forth above, the Board's deci-

8. He also argues that a definition of "residence" should not apply to an interpretation of "has resided." We do not so clearly separate the meanings of a noun and a verb connoting the same concept.

9. The definitions contained in § 1–1302 are "for the purposes of this subchapter," and § 1–1302(16)(A) states that it is defining the term residence "for purposes of voting" (though § 1–1302(16)(E) contains no such express limitation). However, we note that at least one provision of the subchapter does deal with a residency requirement for candidates, § 1–1312(b)(1) (requiring any candidate to have been "a bona fide resident of the District of Columbia continuously since the beginning of the 90–day period ending on the date of the next election...."). We have no occasion to reconcile this provision with the qualifications contained in § 1–225, other than to note that they are not necessarily inconsistent. The provision first appeared in our law in 1955, when it contained a three-year requirement, subsequently reduced to 90 days in 1971. Act of Aug. 12, 1955, Pub.L. No. 84–376, § 8(b), 69 Stat. 699, 701 (1955), *amended by* Act of Dec. 23, 1971, Pub.L. No. 92–220, 85 Stat. 788, 790 (1972). We recognize that a definition of residency for voting purposes, apart from durational requirements, need not necessarily be coextensive with that for candidacy.

10. We are not persuaded by petitioner's argument that Mr. Barry's incarceration was not "at

public expense." While the terms of his sentence provided that he "pay the costs of his confinement" to the United States, his absence from the District was nonetheless involuntary and § 1–1302(16)(E) does not purport to be a complete enumeration of absences that may yet be consistent with residence in the District.

11. Petitioner complains that the Board acted without evidence of record before it. However, at the hearing granted by the Board to consider his request for an opinion, he at no point contested the factual assertions that were made on Mr. Barry's behalf. These included that "[Mr. Barry] maintained a residence here, paid for that residence here ... [h]is voter registration, he did not change that in any way, he maintained that; [he maintained] a valid driver's license in the District of Columbia ... [h]e paid his mortgage, paid his taxes." Moreover, petitioner stipulated that Mr. Barry was a qualified elector and that he was domiciled in the District. Petitioner conceded that "[Mr. Barry] did not lose his residence; he did not lose his domicile." Furthermore, the Board had before it by the time of the July 21 hearing a sworn Affidavit of Qualifications. 3 DCMR § 601.5 (1990). The issue as consistently framed before the Board was whether Mr. Barry's involuntary absence from the District by itself precluded a finding of one-year residence.

sion of July 21, 1992, denying petitioner's challenge must be, and is hereby,

*Affirmed.*