# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 9, 2005        Decided October 25, 2005

No. 04-7084

IRENE BRANHAM, AS NEXT FRIEND OF THE MINOR CHILD
TERRANCE BRANHAM,
APPELLEE

v.

THE GOVERNMENT OF THE DISTRICT OF COLUMBIA,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cv00986)

---

*Mary T. Connelly*, Assistant Attorney General, Office of
Attorney General for the District of Columbia, argued the cause
for appellant. With her on the briefs were *Robert J. Spagnoletti*,
Attorney General, and *Edward E. Schwab*, Deputy Attorney
General.

*Paul S. Dalton* argued the cause and filed the brief for
appellee.

Before: EDWARDS, TATEL, and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Unable to convince a hearing officer that his public school placement was inappropriate under the Individuals with Disabilities Education Act, thirteen-year-old Terrance Branham and his mother took their case to United States District Court. Siding with the Branhams, the district court reversed the hearing officer and ordered the District of Columbia (1) to provide Terrance with four years of remedial tutoring and (2) to pay for his attendance at a private school. On appeal, the District, conceding that it denied Terrance the free and appropriate public education to which federal law entitles him, argues that nothing in the record supports the tutoring and private placement awards. We agree. Both the Supreme Court and this circuit have held that district courts may order school districts to implement educational programs for handicapped students only after finding, based on record evidence, that the programs are tailored to meet the students' specific educational needs. Because the district court here made no such findings with respect to either the tutoring or the private placement— indeed, the record is so barren of evidence that making such findings would have been impossible—we reverse and remand for the court to develop an evidentiary record and fashion an educational program designed to meet Terrance's needs.

## I.

Earlier this year in *Reid v. District of Columbia*, 401 F.3d 516 (D.C. Cir. 2005), we described the Individuals with Disabilities Education Act (known as "IDEA") this way:

> Under [IDEA], states and territories, including the District of Columbia, that receive federal educational assistance must establish "policies and procedures to ensure," among other things, that "free appropriate public education," or "FAPE," is available to disabled children. *See* 20 U.S.C. § 1412(a)(1)(A). . . . School districts may not ignore disabled students' needs, nor may they await parental

demands before providing special instruction. Instead, school systems must ensure that "[a]ll children with disabilities residing in the State . . . regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated." *Id*. § 1412(a)(3)(A). Once such children are identified, a "team" including the child's parents and select teachers, as well as a representative of the local educational agency with knowledge about the school's resources and curriculum, develops an "individualized education program," or "IEP," for the child. *See id.* §§ 1412(a)(4), 1414(d). Pursuant to the Supreme Court's decision in *Board of Education of the Hendrick Hudson Central School District, Westchester County v. Rowley*, 458 U.S. 176, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982), the IEP must, at a minimum, "provid[e] personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *See id.* at 203, 102 S. Ct. 3034. . . . "If no suitable public school is available, the [school system] must pay the costs of sending the child to an appropriate private school." *Jenkins v. Squillacote*, 935 F.2d 303, 305 (D.C. Cir. 1991).

*Reid*, 401 F.3d at 518-19 (second omission in original).

At issue in *Reid* was whether the district court had abused its discretion in ordering, without explanation, tutoring in the amount of one hour for each day that a learning-disabled sixteen-year-old boy went without a FAPE. Although we confirmed that compensatory education awards are available for IDEA violations, *id.* at 522-23, we rejected the district court's "mechanical" calculation of that award, *id.* at 524. Reasoning that a "cookie-cutter" approach, *id.* at 523, cannot be squared with IDEA's conferral of equitable authority to "grant such relief as the district court determines is appropriate," 20 U.S.C.

§ 1415(i)(2)(C)(iii), we held that "the ultimate [compensatory] award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place," *Reid*, 401 F.3d at 524. Unlike "ordinary IEPs [that] need only provide 'some benefit,' compensatory awards must do more—they must *compensate*." *Id*. at 525 (emphasis in original). We emphasized repeatedly that this inquiry must be qualitative, fact-intensive, and above all tailored to the unique needs of the disabled student. *Id.* at 524.

Like the student in *Reid*, Terrance Branham is a teenager whom the District of Columbia Public Schools (or "DCPS") classified as learning disabled. In October 1999, DCPS placed Terrance at the Prospect Learning Center, a full-time special education facility. Terrance's first IEP was prepared the following June.

Two and a half years later, Terrance's test scores indicated he had made only "very limited" progress while at Prospect. Appellant's App. 66 (testimony before hearing officer). His performance remained "significantly below grade level." *Id*. at 95 (Terrance's IEP). School officials and Terrance's mother, appellee Irene Branham, met in January 2003 to develop a new IEP that might better serve Terrance's needs. Although Terrance's mother signed the IEP, she indicated her disagreement with its contents in the space above her signature.

Later that month, the Branhams petitioned for an impartial due process hearing, *see* 20 U.S.C. § 1415(f)(1)(A) (providing right to due process hearing), alleging that DCPS had denied Terrance a FAPE and seeking a private-school placement and compensatory tutoring. The hearing officer found that DCPS was providing Terrance with a FAPE and dismissed the

complaint. When Terrance later "aged out" of Prospect, he enrolled at Cardozo High School, a general education school.

In the meantime, the Branhams brought suit in the United States District Court for the District of Columbia, *see* 20 U.S.C. § 1415(i)(2)(A) (providing right to bring civil action), and filed a motion for summary judgment. When DCPS missed the deadline for responding, the district court entered a default judgment in the Branhams' favor. *Branham v. District of Columbia*, No. 03-986 (D.D.C. Nov. 4, 2003). One week later, DCPS moved to vacate the judgment, claiming it had misunderstood the briefing schedule. In opposition, the Branhams argued that Terrance had already "secured an appropriate placement at the High Road's Upper School of Washington, D.C." and that vacating the judgment would harm Terrance's education. Mem. in Opp'n to Def.'s Mot. to Alter or and or [sic] in the Alternative to Vacate Order of Nov. 4, 2003, at 2. The following day, DCPS filed its motion opposing the grant of summary judgment, but said nothing about the proposed placement at High Road. In their reply to DCPS's opposition brief, the Branhams asked the court to order DCPS "to place and fund Terrance with transportation at High Road Upper School of Washington D.C.," Pl.'s Reply Mem. to Def.'s Opp. to Summ. J. 6, but provided no information about the school. The district court eventually vacated the default judgment and considered the summary judgment motion on the merits. *Branham v. District of Columbia*, No. 03-986 (D.D.C. Dec. 9, 2003).

In order to get a handle on the deficiencies in the record, the district court held a status conference on April 15, 2004. The court began the conference by observing that the "paucity" of evidence introduced at the hearing regarding Terrance's disability, and in particular the lack of academic evaluations detailing what support Terrance needed, would pose "a serious

practical problem": "[W]e don't have any of that information on the record now in terms of ordering the relief that [Terrance is] requesting." Tr. of 4/15/04 Status Conf. 4. The judge told the parties she was considering remanding the case so that a hearing officer could get "further evidence on [Terrance's] academic progress or particularly the lack of it, and the reasons for it, whether any evaluations were conducted." *Id*.

Vehemently objecting to a remand, the Branhams argued that the deficiencies in the record resulted from DCPS's failure for more than four years to evaluate Terrance. The Branhams' lawyer again reported that Terrance had been "accepted at High Roads," which he described as "a full-time [special education] program . . . that accepts and has a contract with the District of Columbia public schools," *id*. at 3, and emphasized that High Road would be "a lateral move" for Terrance, *id*. at 6.

After questioning the Branhams' counsel (though not about High Road), the district court asked DCPS's attorney whether he had anything "to add or to say." *Id*. at 10. "I don't have much to add," he responded, "except that this is an appeal from a hearing officer's decision based upon the record." *Id.* When the judge pointed out that "the record says nothing," counsel repeated his belief "that the [hearing officer's] opinion is supported by the record." *Id*. Pressed about DCPS's failure to monitor and evaluate Terrance, counsel said he "wasn't prepared to address those issues," but reiterated that "[i]f it's not in the record, or if it is in the record, the Court has to give due deference to the hearing officer's opinion." *Id*. at 11. Despite having known for a year and a half about Terrance's request for private placement, and for at least four months about his acceptance by High Road, DCPS mentioned neither High Road nor any other private placement.

One week later, the district court entered judgment for the Branhams. Overruling the hearing officer, the court found that DCPS had failed to show that Terrance's IEP and his placement at Prospect were adequate to meet his individual needs, that the hearing officer's conclusion to the contrary had no support in the record, that Terrance's placement at Prospect was inappropriate, and that the District had denied him a FAPE. *Branham v. District of Columbia*, No. 03-986, slip op. at 9-12 (D.D.C. Apr. 22, 2004). The district court gave Terrance two forms of relief. First, it awarded "a lump sum grant of compensatory education in the form of individual tutoring for denial of a FAPE for the [four] years Terrance spent at Prospect." *Id*. at 13. Although the court offered no further explanation of the compensatory award, both parties now agree that "the lump sum grant" amounted to four years of tutoring as compensation for the four years that DCPS denied Terrance a FAPE. Second, given DCPS's longstanding failure to meet its IDEA obligations, the court concluded that a private placement would be most appropriate. Because DCPS "ha[s] not provided any evidence in the due process hearing or in [its] Opposition brief, suggesting that the High Road School of the District of Columbia is in any way inappropriate or that Terrance would not benefit from that placement," the court ordered DCPS to "enroll Terrance in the High Road School of the District of Columbia beginning in the 2004-2005 school year at no cost to [the Branhams]." *Id*.

On appeal, the District does not challenge the district court's conclusion that DCPS denied Terrance a FAPE. It appeals only the tutoring and private placement remedies, arguing that the district court failed to make findings of fact relating to their appropriateness, and in any event had insufficient evidence to make any such findings.

## II.

We begin with the tutoring remedy. In its opinion, which of course predated *Reid*, the district court neither assessed "what services [Terrance] needs to elevate him to the position he would have occupied absent the school district's failures," nor offered any hint that the remedy was carefully tailored to provide those services. *See Reid*, 401 F.3d at 527. The court's unexamined "lump sum grant of compensatory education . . . for the years Terrance spent at Prospect" represents just the kind of "cookie-cutter" approach to compensatory remedies that *Reid* has now explicitly disavowed. *Id*. at 522-25.

Asked at oral argument to explain how the award of four years of tutoring for four years without a FAPE was tailored to Terrance's needs, the Branhams' counsel insisted that "[i]t just happens to be that those numbers are equal and therefore you can reasonably make [the] assumption" that the district court tailored the award. Oral Arg. at 15:11. We may assume no such thing. The district court never engaged in the qualitative, fact-intensive analysis that *Reid* now requires, and in any event the "paucity" (the district court's own word) of record evidence about Terrance's disability would have precluded it from doing so. Because the court's compensatory tutoring award thus fails to meet *Reid*'s demanding standard of "an informed and reasonable exercise of discretion," *Reid*, 401 F.3d at 527, we will reverse and remand for reconsideration in light of *Reid*.

## III.

Turning next to the question of Terrance's placement, we begin by observing that an award of private-school placement is not, like the tutoring award, retrospective relief designed to compensate for *yesterday's* IDEA violations, but rather prospective relief aimed at ensuring that the child receives *tomorrow* the education required by IDEA. Although the two

forms of relief have different purposes, placement awards, like compensatory awards, *see Reid*, 401 F.3d at 523-25, must be tailored to meet the child's specific needs. IDEA itself so requires: It guarantees disabled students "special education and related services *designed to meet their unique needs*." 20 U.S.C. § 1400(d)(1)(A) (emphasis added). In *Rowley*, the Supreme Court emphasized that "the benefits obtainable by children at one end of the [disability] spectrum will differ dramatically from those obtainable by children at the other end, with infinite variations in between." 458 U.S. at 202. As such, determining what constitutes a FAPE will always require a fact-intensive and child-specific inquiry.

To inform this individualized assessment, "[c]ourts fashioning discretionary equitable relief under IDEA must consider all relevant factors." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 16 (1993); *see also Reid*, 401 F.3d at 523-24. Specifically, courts have identified a set of considerations "relevant" to determining whether a particular placement is appropriate for a particular student, including the nature and severity of the student's disability, the student's specialized educational needs, the link between those needs and the services offered by the private school, the placement's cost, and the extent to which the placement represents the least restrictive educational environment. *See Rowley*, 458 U.S. at 202 (noting that "sufficient educational benefit" will vary from child to child); *McKenzie v. Smith*, 771 F.2d 1527, 1531 (D.C. Cir. 1985) (affirming district court's placement decision that took into consideration the student's "individual needs"); *id*. at 1534-35 (affirming private placement based on match between a student's needs and the services offered at a particular school); *Carter*, 510 U.S. at 16 (holding that tuition reimbursement may be reduced if the cost of the private education is "unreasonable"); *Holland v. District of Columbia,* 71 F.3d 417, 425 (D.C. Cir. 1995) (remanding for consideration, among other

things, whether the costs of a private placement were reasonable); *Walczak v. Fla. Union Free School Dist.*, 142 F.3d 119, 132 (2d Cir. 1998) (discussing IDEA's preference for less restrictive environments). Because placement decisions implicate equitable considerations, moreover, courts may also consider the parties' conduct. *Reid*, 401 F.3d at 524.

The record in this case contains none of the required information. DCPS's repeated failure to evaluate Terrance led to a "paucity" of record evidence about Terrance's disability. The record provides no insight about the precise types of educational services Terrance needs to progress. Still less does the record reveal what services High Road would provide, the cost of those services, whether those services would meet Terrance's needs, or whether the school would provide the least restrictive appropriate educational environment. To be sure, at the April 15 status conference the Branhams' lawyer told the district court that High Road provided full-time special education services and had a contract with DCPS. But even assuming for the sake of argument that these unsupported assertions could be considered evidence, they tell us next to nothing about High Road's program or how it might serve Terrance's specific educational needs. In short, the district court knew so little about Terrance's needs and High Road's services that its placement order could not have amounted to "an informed and reasonable exercise of discretion." *Id.* at 527.

## IV.

We close by addressing what we learned at oral argument about Terrance's plight. Asked whether setting aside the remedial order might disrupt Terrance's education, the District's counsel assured us that DCPS would continue supporting Terrance at High Road until the district court approved a new IEP. But the Branhams' counsel then informed us that Terrance had never actually attended High Road because, given the

District's decision to appeal to this Court, the school thought it too risky to accept Terrance. According to counsel, Terrance instead continued attending Cardozo High School until "he got into trouble" and was sent to the Oak Hill Youth Center, Oral Arg. at 17:00, "a juvenile detention facility with a history of problems so serious that even the District has called it a 'troubled program,'" *District of Columbia v. Jerry M.*, 738 A.2d 1206, 1212 (D.C. 1999). Terrance has been moved yet again, this time to a "secured group home in Baltimore." Oral Arg. at 21:43.

We describe Terrance's "education" to emphasize the consequences of DCPS's utter failure to fulfill its IDEA obligations. It is because DCPS shirked its duty to evaluate and monitor Terrance that the record says so little about his academic needs. DCPS provoked the default judgment that prompted Mrs. Branham to seek an alternative placement for her son in the first place. And DCPS has offered no explanation for its total failure from November 2003 to April 2004 to make any effort, whether in supplemental motions or at the April 15 status conference, to inform the district court that it objected to the High Road placement—a particularly serious failure given its claim here that the district court was out of line in ordering the placement.

At the time the district court issued its decision, Terrance had spent four years without a FAPE, and his mother had spent fifteen months contesting his placement. Terrance is now fifteen years old, but there is still time to help him.

## V.

We reverse the judgment of the district court and remand for further proceedings consistent with this opinion. Although *Reid* permits the district court either to take supplemental evidence or to return the case to the hearing officer, *see Reid*,

401 F.3d at 526, in light of the educational harms Terrance has already suffered, we encourage the district court to undertake the evidentiary hearing itself in order to minimize the potential for further delay.  On remand, both parties may submit evidence as to the appropriateness of their preferred plan for Terrance, and of course IDEA continues to obligate DCPS to come forward with a plan that meets Terrance's needs.  *See* 20 U.S.C. § 1412(a)(1)(A).    In the end, it is the district court's responsibility to ensure it has a record sufficiently developed to fulfill its obligation under IDEA, namely, to weigh "all relevant factors," *Carter*, 510 U.S. at 16, and "grant such relief as [it] determines is appropriate," § 1415(i)(2)(C)(iii).

*So ordered.*