In the Matter of Challenge to Nominating Petition of Ellis HAWORTH, Candidate for At Large Member of District of Columbia Board of Education in November 4, 1969, Election.

In the Matter of Challenge to Nominating Petition of Evie Mae WASHINGTON, Candidate for Ward 2 Member of the District of Columbia Board of Education in November 4, 1969, Election.

In the Matter of Challenge to Nominating Petition of Frederick M. McCOY, Candidate for At Large Member of the District of Columbia Board of Education in November 4, 1969, Election.

Nos. 4287, 4296, 4300.

District of Columbia Court of Appeals.

Argued Oct. 20, 1969.

Decided Oct. 24, 1969.

Lee R. Marks, petitioner, pro se, John R. Hess, Asst. Corp. Counsel, with Hubert B. Pair, Acting Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, for Board of Elections, and James F. O'Donnell, Washington, D. C., for Candidate Haworth.

Arthur E. Strout and John W. Karr, petitioners, pro se, John R. Hess, Asst. Corp. Counsel, with Hubert B. Pair, Acting Corp. Counsel and Richard W. Barton, Asst. Corp. Counsel, for Board of Elections, and Dovey J. Roundtree, Washington, D. C., for Candidate Washington.

Alexander L. Benton, Washington, D. C., for petitioner and John R. Hess, Asst. Corp. Counsel, with Hubert B. Pair, Acting Corp. Counsel and Richard W. Barton, Asst. Corp. Counsel, for Board of Elections.

Before HOOD, Chief Judge, and KERN and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

These cases were consolidated for hearing on individual applications for review of decisions of the District of Columbia Board of Elections.[1] Each case arises from a challenge to a nominating petition for a position on the Board of Education filed before the Board.[2] Each challenge presents different issues and we find it convenient to consider the cases separately in this opinion.

 It is, however, appropriate to consider at the outset the scope of review of this court in these proceedings. Section 1–1108(j) (2), *supra*, provides that "either the challenger or any person named in the challenged petition as a nominee may apply to the District of Columbia Court of Appeals *for a review of the reasonableness* of [the Board's] determination." (Emphasis supplied.) To the extent that the cases present for review determinations of fact by the Board we will review to determine whether the findings of the Board are

1. D.C.Code 1967, § 1–1108(j) (2) (Supp. II, 1969).

2. D.C.Code 1967, § 1–1108(j) (1) (Supp. II, 1969).

supported by substantial evidence and will not undertake an independent evaluation of the evidence. Where the Board has undertaken to define and apply its own regulations [3] we are, of course, governed by the prescribed reasonableness standard and cannot substitute a different judgment for reasonable Board action. In cases where a question of law, including statutory interpretation, is presented, the parties and the Corporation Counsel have agreed that the prescribed standard for review permits this Court to determine such issues. We agree that such is a proper interpretation of § 1–1108(j) (2), *supra*. We cannot infer, in view of the fact that Congress provided judicial review of Board action, that it intended to permit the Board to finally decide such questions. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

### *Dr. Haworth, No. 4287 Orig.*

The challenge to Dr. Haworth's nominating petition has distilled to two issues, each dealing with a group of signatories with a single and different question presented. Invalidity of the signatures in either group will operate to disqualify the petition and thus the candidacy of Dr. Haworth. Since he is a candidate at large he must, under the applicable statute,[4] file a petition "signed by at least one hundred and twenty-five [125] persons in each ward of the District [of Columbia] who are duly registered in such ward." The challenge concerns signatures from Ward 2.[5]

### I

■ The first group presents the question whether a person's signature on the petition is valid if he was a qualified elector duly registered in the District of Columbia and living in Ward 2, but, by virtue of previous residence, was on the rolls of another ward. The Board held that each of these persons "gave notice to the Board of his change of address when the nominating petition was filed by Dr. Haworth." It appears from the record that the Board does not have any prescribed procedure for notifying it of a change of address, but it is apparent that such notification by a duly registered voter [6] operates simply to cause his name to be withdrawn from the rolls of one ward and added to the rolls of another. The Board's *Regulation No. 2, §* 201(c), governing qualifications and nominations of school board candidates, defines "registered residents of the ward" as

> * * * all those persons who are qualified electors, duly registered to vote in the District of Columbia, and the addresses of whom, *as shown on the records of the Board of Elections,* are within the boundaries of such ward. (Emphasis supplied.)

We hold that the Board was reasonable in its conclusion that the nominating petition could be considered as part of the records of the Board for purposes of notifying it of a change of address. Therefore, these signatures were properly counted as valid.

### II

■ The second group of signatures presents the question whether one who is not registered in the District of Columbia may validly sign a nominating petition and then register after the petition is filed with the Board. The Board held that Dr. Haworth made substantial effort to comply with the law. It observed that he was told by some who signed that they were not

---

3. D.C.Code 1967, § 1–1105(c).

4. D.C.Code 1967, § 1–1108(i)( B) (Supp. II, 1969).

5. Pursuant to D.C.Code 1967, § 1–1105 (a) (4) (Supp. II, 1969), the Board of Elections has divided the District of Columbia into eight contiguous school election wards each of which includes a sufficient number of voting precincts to provide approximately equal population.

6. D.C.Code 1967 § 1–1107(a) (Supp. II, 1969), contemplates registration in the District of Columbia and not registration in wards or precincts.

registered but would do so before the final day for filing the nominating petitions, and that they failed to do so. The Board also noted that when challenges were made Dr. Haworth requested those persons to register before the final nominating day and many did.[7] Accordingly, the Board concluded to "accept these late registrations as effective as of the date the petition was filed."

Section 1–1108(i) (B), *supra*, requires that petitions be

> signed by at least two hundred and fifty persons who are duly registered under section 7 in the ward from which the candidate seeks election, or in the case of a candidate running at large, signed by at least one hundred and twenty- five persons in each ward of the District who are duly registered in such ward.

As we read this section, Congress intended that for both ward and at large candidates the signatories to petitions must (1) be duly registered under Section 1–1107, which, as observed in Part I, provides for registration in the District of Columbia and not ward or precinct registration, and (2) that such persons be "in the ward"—that is, residing therein.

It is apparent from the statutory scheme that Congress has regulated both the method of selecting candidates, including the qualifications of those who participate in that process, and the qualifications of those who vote. No one questions that Congress could have provided for a primary election for selection of school board candidates rather than the petition method. Surely, if it had done so, an unregistered voter in the primary election could not retroactively validate his primary ballot by later registering for the general election. Consistent with the primary election system, we think Congress contemplated that those in the District of Columbia who wish to participate in the candidate selection process must be legally eligible to do so at the time that process is under way. We do not believe it was intended that post-nomination registration could accomplish anything more than qualify the registrant to vote in the election. The election process, of necessity, has certain deadlines, and absent a clear expression to the contrary, we cannot impute to Congress an intent to permit after-the-fact events to retroactively validate an otherwise invalid or deficient nominating petition. D.C.Code 1967, § 1–1108(i) (Supp. II, 1969), is clear. Petitions must be signed by persons "who *are* duly registered", not who may later become duly registered at a time when the only participation left for him is to vote.

■ Accordingly, under Section 1–1108 (i), *supra*, the Board could not count this group of signatures as valid. It should have declared that Dr. Haworth failed to qualify as a matter of law, and we so hold.

*Mrs. Evie Mae Washington, No. 4296 Orig.*

The challenges in this case present numerous factual issues which we shall consider separately. Mrs. Washington was held by the Board to be a qualified candidate from Ward 2 with a total of 252 valid signatures on her nominating petition.[8] It is now conceded by the Board, and Mrs. Washington does not contend to the contrary, that one name was counted twice. As to another name, it is agreed that on the record before us the address given is physically located in another ward and there is nothing to indicate that the person's name is otherwise lawfully eligible to appear on a petition in Ward 2. Accordingly, Mrs. Washington is left with 250 signatures, twelve of which are the subject of this review proceeding.

---

7. The final day for filing nominating petitions was September 20, 1969. The final day for registration was October 4, 1969.

8. Under Section 1–1108(i) (B), *supra*, she is required to have 250 valid signatures.

## I

### The name of Jack V. Steward

■ It appears that no Jack V. Steward is on the rolls of Ward 2. However, the Board found that one Jack V. Stewart was on the rolls and that his address was the same as that listed on the nominating petition. On the material before this court we cannot say that the Board was unreasonable in concluding that the signature was valid.

## II

### The name of Sylvester Proctor

■ On the signature space opposite the printed name and address of Sylvester Proctor appear the hand-inscribed initials "S. P.". The Board had evidence before it on which it might have properly concluded that Mr. Proctor signed as his signature the initials "S. P.". We cannot say, based on the material before it, that the Board was required as a matter of law to reject that signature. Accordingly, we rule that the Board did not act unreasonably in counting the name as valid.

## III

### The names of Nannie Gillespie and Lucille Savage

■ These names were challenged as being signed by others with authority so to do. However, the Board heard testimony that each had signed her own name.[9] We cannot say that on the material before it the Board was required to reach a dif-

ferent conclusion. Accordingly, we hold that the Board was not unreasonable in counting the signatures as valid.

## IV

Eight duly registered persons who signed Ward 2 petitions but were on the rolls of another ward.

The issue here presented is governed by our holding in Part I of the Dr. Haworth opinion, *supra*. Therefore, we do not overturn the Board ruling on these names.

With 250 valid signatures left on the nominating petition, we affirm the Board's ruling that Evie Mae Washington is a qualified candidate.

### *Frederick M. McCoy, No. 4300 Orig.*

The Board sustained the challenge to Mr. McCoy's at large nomination because his Ward 1 list did not contain the required 125 signatures. When challenged, he supplied the Board with a list identifying the signatures, appearing throughout other parts of his petition, of persons who were in fact from Ward 1. This method of calculating the required number of ward petitioners appears to be contrary to the Board's regulations.[10] However, the Board did not pass on this point because it was able to see that, of the names supplied by Mr. McCoy from throughout his petition, there were 19 instances where 14 names were included two or more times. With Mr. McCoy's list he had a total of 132 names from Ward 1, but when the Board deducted the duplications he had only 113, 12 less than the required 125. Petitioner concedes he thus

9. We, thus, need not and do not decide whether Section 1–1108(i) (B) *supra*, permits one with authority to place another person's signature on a nominating petition.

10. Section 204(e) of Regulation 2, *supra*, provides:
*Contents of Petition nominating a Candidate for Election At Large to the Board of Education.* Each petition nominating a candidate for election at large to the Board of Education shall consist of eight separate parts, one part for each of the eight election wards. Each part shall consist of a number of sheets of the petition form. The front of each sheet shall contain the information required by subsection (c) above. The back of each sheet shall contain the signatures of the registered residents of the ward to which the part of the petition applies so that not less than 125 valid signatures shall appear on all the sheets of that part at the time of filing the petition.
\* \* \*.

had an insufficient number of signatures from Ward 1.[11]

▮ McCoy then asked the Board to accept a list of 22 additional names which he says were left off of the petition when it was filed. The Board did not rule on this request because it found, for other reasons, that even with these 22 names the Ward 1 part of the petition was insufficient. We need not reach the merits of this ruling because, under the circumstances appearing from this record, we hold that such belated attempt to add to the Ward 1 list must fail. See D.C.Code 1967, § 1-1108(i)(A) (Supp. II, 1969).

▮ One final point warrants mention. Section 1-1108(j) (2), *supra*, provides that the Board shall determine the validity of challenges "not more than eight days after the challenge has been filed." In McCoy's case, the parties and the Board agreed that the determination might be postponed from the eighth day, a Saturday, to the following Monday. We invited argument on whether this eight-day limit was mandatory and jurisdictional insofar as the challenge was concerned, or whether it was merely directory. We hold that limitation of time for decision is directory only and delay beyond that period does not deprive the Board of jurisdiction to rule upon pending challenges. See Township of Howell, County of Monmouth v. Division of Tax Appeals, 99 N.J.Super. 11, 14, 238 A.2d 476, 479 (1968); Muskego-Norway Consolidated Schools, Joint School Dist. No. 9 v. Wisconsin Employment R.B., 32 Wis.2d 478, 479, 151 N.W.2d 84, 85 (1967); Koehn v. State Board of Equalization, 166 Cal.App.2d 109, 114, 333 P.2d 125, 131 (Dist.Ct.App. 1958).

We think no difficulty was caused by this delay from Saturday to Monday, but we hasten to observe that the limited time available before the election cannot accommodate substantially longer delay in Board determination. Aside from the time required for review and decision by this Court, some time is required thereafter to print and distribute the ballots. Accordingly, the Board should be most circumspect in delaying its decisions.

The decision of the Board in No. 4287 Original is reversed and it is ordered that the name of Dr. Ellis Haworth shall not appear on the ballot.

The decision of the Board in No. 4296 Original holding valid the nominating petition of Evie Mae Washington is affirmed.

The decision of the Board in No. 4300 Original holding invalid the nominating petition of Frederick M. McCoy is affirmed.