Florence PENDLETON, Petitioner,

v.

**DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS, Respondent,**

**De Long Harris, Jr., Intervenor.**

**No. 79–1270.**

District of Columbia Court of Appeals.

Argued Dec. 4, 1980.

Decided July 22, 1981.

John T. Fowler, Washington, D.C., with whom Mortimer F. Coward, was on the brief, for petitioner.

William H. Lewis, for respondent.

De Long Harris, Washington, D.C., for intervenor.

Before NEBEKER, MACK and FERREN, Associate Judges.

PER CURIAM:

Petitioner, an unsuccessful write-in candidate in the November 1979 election for a seat on the Advisory Neighborhood Commission, seeks review of the decision of the Board of Elections and Ethics which credited two contested write-in votes to intervenor De Long Harris, Jr. and certified him as the winner of the election by a margin of one vote. Because we agree with petitioner that the Board erred in crediting one of those write-in ballots to candidate Harris, we set aside the election results as certified by the Board, declare that the true vote count resulted in a tie, and remand the case to the Board to implement its tie-breaking procedures.

Petitioner and intervenor were the sole registered candidates [1] in the November 1979 election for the office of Member of Advisory Neighborhood Commission No. 5C, Single Member District No. 07. On November 21, 1979, the Board certified the results of the election, declaring intervenor the winner. The results were as follows: De Long Harris, Jr.—39 votes; Florence H. Pendleton—37 votes; other write-in ballots —23 votes. Pursuant to D.C.Code 1973, § 1–1111(a) (as amended),[2] petitioner, as an unsuccessful candidate, filed a petition requesting the Board to conduct a recount of the election results. A recount was conducted by an elections administrator, and petitioner successfully challenged one write-in ballot previously credited to intervenor: the ballot was marked "Mr. Long." Petitioner was unsuccessful in her challenge of a ballot marked "Harris," and for some reason not clear on the record, an additional ballot previously credited to intervenor was lost during the recount. Thus, the results of the recount as certified by the elections administrator to the Board were: De Long Harris, Jr.—37 votes; Florence Pendleton— 37 votes; Mr. Long, Ernest Kinard, Frank Smith, Rick Sowell and Betty Benjamin—1 vote each; and blanks (unvoted)—22 ballots.

Intervenor then filed with the Board a petition to reconsider the decision of its elections administrator to deduct from in-

1. Accordingly, only their names appeared on the preprinted election ballots for that office.

2. Section 1–1111(a) provides:

   If, within seven days after the Board certifies the results of an election, any qualified candidate at such election petitions the Board to have the votes cast at such election recounted in one or more voting precincts, the Board shall order such recount. . . .

tervenor's totals the ballot marked "Mr. Long." Petitioner asked the Board to review the administrator's decision as it related to the ballot marked "Harris." During a public session of the Board, the parties presented their arguments, and the Board concluded that the persons casting ballots for "Harris" and "Mr. Long" intended to vote for De Long Harris.

■ Our purpose in reviewing elections is merely to insure that no voter was disenfranchised through improper interpretation by the Board, that the results certified by the Board are in fact the true results, and that the Board performed its duty in a constitutionally and statutorily correct manner. *Gollin v. District of Columbia Board of Elections and Ethics*, D.C.App., 359 A.2d 590 (1976). The scope of review and remedies available are clearly delineated in D.C.Code 1973, § 1–1111(b) (as amended):

> Within seven days after the Board certifies the results of an election, any person who voted in the election may petition the District of Columbia Court of Appeals to review such election. In response to such a petition, the court may set aside the results so certified and declare the true results of the election or void the election in whole or in part. To determine the true results of an election the court may order a recount or take other appropriate action, whether or not a recount has been conducted or requested pursuant to subsection (a). The court shall void an election only for fraud, mistake, the making of expenditures by a candidate, or the willful receipt of contributions in violation of the District of Columbia Campaign Finance Reform and Conflict of Interest Act (D.C.Code, sec. 1–1121 et seq.), or other defect, serious enough to vitiate the election as a fair expression of the will of the registered qualified electors voting therein. If the court voids an election it may order a special election, which shall be conducted in such manner (comparable to that prescribed for regular elections), and at such time, as the Board shall prescribe. The

decision of such court shall be final and not appealable.

■■ When the Board, in a particular situation, has attempted to define and apply its own regulations, we are governed by the prescribed reasonableness standard and cannot substitute a different judgment for reasonable Board action. *In re Haworth*, D.C. App., 258 A.2d 447 (1969). Finally, when questions of law or statutory interpretation are presented, the standard of review permits this court to decide such issues. *Id.*

■ At the time of the contested election, the Rules and Regulations of the Board of Elections and Ethics provided that in the case of write-in ballots, "[e]very ballot shall be counted for the candidate for who[m] it was intended if the elector's intent can be ascertained from the ballot itself." Section 132.4(e)(4)(vii), 25 DCR 3825 (10/27/78). Prior to the promulgation of this rule, we had occasion to address the nature of the consideration this court should undertake in discerning the intent of the voter.

> In determining the true results this court must attempt to discern the intent of the voters. A New Jersey court has enunciated the means to discern this intent:
>
>> In a word, reliable evidence ... should be searched to effectuate the voter's wish and preserve the franchise. [*Petition of Fifteen Registered Voters of County of Sussex*, 129 N.J.Super. 296, 301, 323 A.2d 521, 523, *petition for certification denied*, 65 N.J. 577, 325 A.2d 711 (1974).]
>
> Furthermore, the standard to be applied in determining intent is not one of absolute sureness. Reasonable certainty is enough. In attempting to discern intent, moreover, this court is mindful that a prime purpose of Congress in formulating the District of Columbia Elections law was to keep the franchise open to as many people as possible. [*Gollin v. District of Columbia Board of Elections and Ethics, supra* [395 A.2d] at 595 (citations omitted).]

Although the subsequent rule of the Board, on its face, appears to limit that

evidence which can be taken into account in discerning a voter's intent, in practice, the Board continues to consider extrinsic evidence. As applied to the instant case, the Board not only took cognizance of the names of the registered candidates and examined the ballot itself, it also examined the voter registration rolls to discover whether a Mr. Long was listed, and received unsworn testimony concerning the nicknames to which intervenor answered and the whereabouts of the only person surnamed Long listed on the registration rolls. We have previously noted that when the Board attempts to apply its own regulations, we cannot substitute our judgment if the Board's application is reasonable. *In re Haworth, supra*. We conclude that it was reasonable for the Board to consider extrinsic evidence and that it was required to do so pursuant to this court's mandate in *Gollin v. District of Columbia Board of Elections and Ethics, supra*. We conclude, however, that the Board's decision on the merits did not rest on reliable and substantial evidence indicating, to a reasonable certainty, that the voter casting the ballot for "Mr. Long" intended to vote for De Long Harris.

■ The Board's decision rests on basically three grounds: 1) there were no *Mr. Longs* listed on the voter registration rolls; 2) intervenor answers to the nickname of "Long"; and 3) intervenor was the only registered candidate with "Long" as part of his name. In its written decision, the Board concluded:

> Because of the facts and circumstances set forth above there can be no doubt that the elector in question intended to vote for his neighbor DELONG HARRIS, JR. although he used only a portion of his name or more specifically, that portion of the name to which DeLONG HARRIS, JR. was known to the elector, namely, "LONG." It is significant to note that it would be passing strange for an elector of Area 5C.07 to vote for a *MISTER LONG* when there was no other person registered, living or qualified in the area other than one whose first name is De-LONG .... there were no other persons

in the area bearing any names either similar to or which might easily be misspelled by "LONG." Certainly it could not be said that the elector intended to vote for *MISS LONG* because the ballot is clear on its face "MR."

Besides the voter registration roll, the evidence to support the conclusions of the Board consists of the unsworn statements of intervenor's father. Moreover, the Board fails to take into consideration that other ballots in the election were cast for persons not listed on the voter registration roll, *e. g.*, Betty Benjamin, Frank Smith and Rick Sowell, thereby making it equally likely that the vote for "Mr. Long" might be a vote for a person not on the registration roll. The mere fact that a "Mr. Long's" prospects of victory were slim or non-existent is of no import. We have stated, " 'A write-in ballot permits a voter to effectively exercise his individually constitutionally protected franchise. The use of write-in ballots does not and should not be dependent on the candidate's chance of success.' " *Kamins v. Board of Elections for the District of Columbia*, D.C.App., 324 A.2d 187, 194 (1974) *quoting Socialist Labor Party v. Rhodes*, 290 F.Supp. 983, 987 (S.D. Ohio), *aff'd as to this part, modified in part on other grounds sub nom., Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Under these circumstances, we conclude that the decision of the Board to credit to intervenor's totals the ballot marked "Mr. Long" was not based on reliable and substantial evidence that the voter, to a reasonable certainty, intended to vote for De Long Harris.

■ We do hold that the Board correctly upheld the elections administrator's decision to credit De Long Harris the ballot marked "Harris." Given the fact that the sole registered candidates were named Harris and Pendleton, it is reasonably certain that the "Harris" ballot was intended as a vote for intervenor.

As a consequence of our decision, we must set aside the election results as certified by the Board and declare that the true vote count results in a tie between interve-

nor and petitioner. Fortunately, our election laws provide for such a contingency. D.C.Code 1973, § 1–1110 (c) (as amended) provides:

In the case of a tie vote, the resolution of which will affect the outcome of any election the candidates receiving the tie vote shall cast lots before the Board, at 12 o'clock noon on a date to be set by the Board, but not sooner than ten days following determination by the Board of the results of the election which require the resolution of such tie, and the one to whom the lot shall fall shall be declared the winner. If any candidate or candidates, receiving a tie vote, fail to appear before 12 o'clock noon on said day, the Board shall cast lots for him or them. For the purpose of casting lots any candidate may appear in person, or by proxy appointed in writing.

Accordingly, we set aside the election results as certified by the Board of Elections and Ethics, declare that the November 1979 election for the Member of the Advisory Neighborhood Commission No. 5C, Single Member District No. 07 resulted in a tie between De Long Harris, Jr. and Florence Pendleton, and remand to the Board to implement the tie-breaking procedures of D.C.Code 1973, § 1–1110(c) to determine the winner of the election.[3]

*So ordered.*

---

**3.** Petitioner also contends that the election should be voided because election officials allowed nonresident electors to vote and also commingled ballots from other districts. Having reviewed the record, we, like the Board, are unable to discern any evidence to substantiate petitioner's claim. We therefore hold that the Board did not err in refusing to void the election on that basis.