*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-AA-0276

KENYAN MCDUFFIE, PETITIONER,

V.

DISTRICT OF COLUMBIA BOARD OF ELECTIONS, RESPONDENT,

and

BRUCE SPIVA, INTERVENOR.

On an Application for Expedited Review of an Order of the
District of Columbia Board of Elections
(2022-BOE-000003)

(Argued April 27, 2022             Decided August 31, 2023)

*Baruch Weiss*, with whom *Thorn L. Pozen*, *Kevin M. Hilgers*, *Joe Sandler*, *Stephen K. Wirth*, and *Samuel F. Callahan* were on the application, for petitioner.

*Christine Pembroke* for respondent.

*Theodore A. Howard* for intervenor.

*Robert P. Charrow* and *Juliana Laurello* for amicus curiae Council Chairman Phil Mendelson, Councilmember Vincent Gray, and former Councilmembers Yvette Alexander, Kwame Brown, Michael Brown, David Catania and Tommy Wells in support of petitioner.

*Mary M. Cheh* on behalf of herself, adopting the views of the amicus brief via letter.

Before EASTERLY and ALIKHAN, *Associate Judges*, and THOMPSON, *Senior Judge*.

EASTERLY, *Associate Judge*: We interpret in this case for the first time the experiential requirements for candidates for Attorney General in the District of Columbia, and specifically what it means for a potential candidate to have been "actively engaged . . . as . . . [a]n attorney employed in the District of Columbia by . . . the District of Columbia." *See* D.C. Code § 1-301.83(a)(5)(D). After an opponent challenged Councilmember Kenyan McDuffie's qualifications to run as a non-practicing attorney, the Board of Elections concluded Mr. McDuffie could not be placed on the ballot for the June 2022 primary election. In light of our obligation to resolve this issue within tight timeframes established by statute, we issued a published order on April 28, 2022, affirming the Board's decision. We briefly explained that the text of D.C. Code § l-301.83(a)(5)(D), although ambiguous, is most reasonably read through a holistic examination of the statute and its history to require that a candidate be employed in an attorney role—in other words, a role that requires the individual to be a licensed attorney. *See McDuffie v. D.C. Bd. of Elections*, 273 A.3d 838 (D.C. 2022) (per curiam). As promised in that order, we now issue this opinion to more thoroughly explain our reasoning.

## I.       Facts and Procedural History

On March 21, 2022, Mr. McDuffie filed his paperwork seeking to run for Attorney General in the upcoming Democratic primary.  Mr. McDuffie represented Ward 5 at the time and had done so since 2012.  He was also an active member, in good standing, of the District of Columbia Bar and had been since he was admitted in 2008.  Prior to his role on the Council, Mr. McDuffie was employed in various attorney roles.  The Board of Elections preliminarily approved his candidacy.

The following day, Bruce Spiva, who also sought the Attorney General position, filed a challenge to Mr. McDuffie's candidacy based on D.C. Code § 1-301.83(a)(5), arguing that Mr. McDuffie's role as a Councilmember could not fulfill the requirement to be "actively engaged . . . as" either "[a]n attorney in the practice of law in the District of Columbia" under subsection (A) or "[a]n attorney employed in the District of Columbia by . . . the District of Columbia" under subsection (D).  Mr. McDuffie conceded that he did not meet the requirements under subsection (A) but argued that the statute's text and history demonstrate that it was meant to include someone like him either because (1) he is an attorney and separately is employed by the District of Columbia or (2) he is an attorney and, although not employed as such, is "actively engaged" in legal work in his capacity as a

Councilmember. The Board of Elections concluded that to be qualified under subsection (D), a potential candidate must "have served or be serving in the position of attorney" (which it defined by "roles where . . . [bar] membership is a prerequisite"[1]), a requirement distinct from being engaged in "practice of law" (which it defined by roles where one is "engaged by a client to perform legal services for consideration"). *See also* D.C. App. R. 49(b)(2) (defining practice of law as "provid[ing] legal services for or on behalf of another person within a client relationship of trust or reliance"). The Board reasoned that this determination was dictated by the plain text of the statute and that to read the statute as Mr. McDuffie had urged would either effectively eliminate an experiential requirement for government employees who happen to be attorneys but do not serve in attorney positions or create a line-drawing problem in determining when a District employee not employed as an attorney is engaged in "functional[ly] equivalent" work. It thus concluded that Mr. McDuffie's name could not be placed on the June 21, 2022, Democratic primary ballot as a candidate for Attorney General.

---

[1] The Board aligned itself with the portion of Mr. Spiva's brief, which would define the "position of attorney" as one that requires *D.C.* Bar membership only, which would be duplicative of the requirement in D.C. Code § 1-301.83(a)(4). At oral argument, the Board clarified that it was defending an interpretation that requires "bar credentials as a condition of employment" not limited to the D.C. Bar. We assess the Board's decision based on that clarification.

Mr. McDuffie sought expedited review of the Board's order pursuant to D.C. Code § 1-1001.08(o)(2).  We considered his petition before the Board of Elections' deadline for printing primary ballots and issued our order affirming the Board's decision on April 28, 2022.  *McDuffie v. D.C. Bd. of Elections*, 273 A.3d 838 (D.C. 2022) (per curiam).  In that order, we "provide[d] a brief summary of our reasoning" but stated a published opinion would follow.  *Id.* at 839.

## II.    The History of the Attorney General for the District of Columbia Clarification and Elected Term Amendment Act of 2010

From the time the District was granted Home Rule until 2014, the position of Attorney for the District of Columbia—until 2004 called "Corporation Counsel" and thereafter the Attorney General[2]—was filled by mayoral appointment.  *See* Attorney General for the District of Columbia Clarification and Elected Term Amendment Act of 2009, Report on Bill 18-65 before the Comm. on Pub. Safety & the Judiciary, Council of the District of Columbia, at 2, 6 & n.19 (Dec. 16, 2009) (hereinafter Comm. Rep.).  After concerns arose about "the independence and integrity of the" Office of Attorney General, the Council considered a bill in 2007 to clarify the appointment process and qualifications required for the role.  *See* Comm. Rep.,

---

[2] Mayor's Order 2004-92 (May 26, 2004).

Memorandum from D.C. Appleseed to Councilmember Phil Mendelson, at 2-3. The 2007 bill would have required seven years of D.C. Bar membership prior to becoming Attorney General, but did not propose any experiential requirements. *See* Attorney General of the District of Columbia Clarification Act of 2007, Bill No. 17-548, § 2(b). At least one commenter urged the Council to add an experiential requirement in addition to D.C. Bar membership. *See* Comm. Rep., Statement of Kathy Patterson, former Chair of the Judiciary Comm., at 2-3. *See generally* Comm. Rep., Memorandum from D.C. Appleseed to Councilmember Phil Mendelson (summarizing the focal points).

The Council considered a new bill in 2009, which aimed to increase the Office of the Attorney General's independence by converting the Attorney General to an elected position and to "strengthen the position of Attorney General through the establishment of minimum qualifications and a term of service." Comm. Rep. at 2. Accordingly, D.C. Bar membership and experiential requirements became key aspects of the 2009 bill.

As initially introduced, the 2009 bill required an individual seeking to run for the position of Attorney General to satisfy the D.C. Bar membership qualification in one of two ways: (1) they could show membership in good standing for seven years

or (2) they could show that they were "a professor of law in a law school in the District of Columbia or . . . *an attorney employed in the District of Columbia by the United States or the District of Columbia*"; they "*ha[ve] been employed in such capacity* for at least five years"; and they have been eligible to join the D.C. Bar for the past seven years.  Bill No. 18-65, § 102(a)(3)(A), (B) (as introduced, Jan. 6, 2009) (emphases added); *see also* Committee Print, § 103(a)(3)(A), (B) (Dec. 16, 2009) (attached to Comm. Rep. at 105).  The initial draft of the 2009 legislation likewise included experiential requirements.  Specifically, a would-be candidate for Attorney General had to show that they "[h]a[d] been *actively engaged*[] for at least five of the ten years" before taking office in one of four professions: "as an attorney in the practice of law in the District of Columbia, as a judge of the District of Columbia court, as a professor of law in a law school in the District of Columbia, or *as an attorney employed in the District of Columbia by the United States or the District of Columbia*.  Bill No. 18-65, § 102(a)(4) (as introduced, Jan. 6, 2009) (emphasis added); *see also* Comm. Print, § 103(a)(4) (attached to Comm. Rep. at 105).

The final bill reduced the D.C. Bar membership requirement to five years but made it mandatory across the board, deleting the alternative for law professors and government attorneys to demonstrate only their seven-year eligibility to join the bar.

*See* D.C. Law 18-160, 57 D.C. Reg. 3012, 3013, § 103(a)(3), (4) (Apr. 9, 2010). But the experiential requirements remained the same—only the structure in the codified version changed slightly to move "[h]as been actively engaged . . . as" to the introductory phrase rather than repeating "as" in each clause. *Compare* Bill No. 18-65, § 102(a)(4) (as introduced, Jan. 6, 2009), *with* D.C. Law 18-160, 57 D.C. Reg. 3012, 3013, § 103(a)(5) (Apr. 9, 2010).[3] In its final form, and as currently codified, the experiential provision of the statute provides that "[n]o person shall hold the position of Attorney General for the District of Columbia unless" they have:

> *been actively engaged*, for at least 5 of the 10 years immediately preceding the assumption of the position of Attorney General, *as*:
> (A) An attorney in the practice of law in the District of Columbia;
> (B) A judge of a court in the District of Columbia;
> (C) A professor of law in a law school in the District of Columbia; or
> (D) *An attorney employed in the District of Columbia by the United States or the District of Columbia.*

D.C. Code § 1-301.83(a)(5) (emphases added).

---

[3] In proposing adjustments to the requirements at the final reading, Councilmember Mendelson also referenced similar qualifications for judges nominated to the District of Columbia courts, codified at D.C. Code § 1-204.33. *See* Legislative Meeting, Council of the District of Columbia, Statement of Councilmember Phil Mendelson, at 2:27:35 to 2:27:58 (Feb. 2, 2010), https://dc.granicus.com/MediaPlayer.php?view_id=3&clip_id=72; https://perma.cc/4GSA-K45A. There were no further discussions regarding the minimum qualifications before the Council passed the bill. *Id.* at 3:01:35 to 3:01:55 (passing the bill as substituted).

## III.   Analysis

No one disputes that Mr. McDuffie meets the predicate requirements of D.C. Code § 1-301.83(a)(1) to (4), requiring that a person running for the office of Attorney General be "a member in good standing of the [D.C.] bar . . . for at least 5 years," as well as "a registered qualified elector," and a "bona fide resident of the District of Columbia."  Likewise, no one disputes that he has not, for at least five of the last 10 years, been "actively engaged" as an attorney practicing law, a judge of a court in the District, or a law professor in a school in the District so as to satisfy the experiential qualifications of D.C. Code § 1-301.83(a)(5)(A), (B), or (C).  Thus, the only question is whether Mr. McDuffie satisfies the experiential requirement of § 1-301.83(a)(5)(D)—i.e., whether, during the relevant timeframe, he has "been actively engaged . . . as . . . [a]n attorney employed in the District of Columbia by . . . the District of Columbia."

The parties disagree as to whether we should defer to the Board's interpretation of this statutory provision.  Mr. McDuffie argues that our analysis of D.C. Code § 1-301.83 should be de novo because statutory interpretation presents a pure question of law and the text is unambiguous in favor of his eligibility.  For their part, the Board and Mr. Spiva assert that the statutory text plainly supports the

Board's decision, but they also argue that this court should accord some deference to the Board's interpretation of the statute. Both arguments have some foundation in our law. *Compare In re Haworth*, 258 A.2d 447, 449 (D.C. 1969) (concluding that the predecessor to D.C. Code § 1-1001.08(o)(2) gave the court the power to decide questions of law, including statutory interpretation, de novo), *with Williams v. D.C. Bd. of Elections & Ethics*, 804 A.2d 316, 318 (D.C. 2002) ("Insofar as the [agency's] legal conclusions are concerned, we must defer to its interpretation of the statute which it administers . . . so long as that interpretation is not plainly wrong or inconsistent with the legislative purpose." (internal quotation marks omitted)).[4] *See also Off. of the People's Couns. v. D.C. Pub. Serv. Comm'n*, 284 A.3d 1027, 1033 (D.C. 2022) (explaining that, "before we afford some deference to an agency's interpretation of the statute that it administers at least two conditions must be met: (1) the statutory language in question must be ambiguous, and (2) the agency's interpretation must be reasonable" (internal quotation marks omitted)). Because we agree with the Board's understanding of the statute, we need not resolve whether

---

[4] The Board possesses some authority under D.C. Code § 1-1001.05(a)(14) to promulgate regulations "necessary to carry out" its duties under the statute including those "necessary to determine that candidates meet the statutory qualifications for office." It appears, however, that the Board has exercised this power only to promulgate procedural regulations, *see, e.g.*, 3 D.C.M.R. § 400 et seq. (hearing procedures); *id.* § 600 et seq. (process for determining candidate eligibility); it has not sought to substantively interpret D.C. Code § 1-301.83(a)(5)(D).

deference to the Board is warranted.

As always, we begin our analysis with the text of the statute, because "[t]he primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that [they] . . . used." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (quoting *Varela v. Hi-Lo Powered Stirrups, Inc.*, 424 A.2d 61, 64 (D.C. 1980) (en banc)).  We first look "to see if the language is plain and admits of no more than one meaning." *Id.* at 753. We interpret the statute through a holistic examination of its "full text, language[,] . . . punctuation, structure, and subject matter," *Baltimore v. District of Columbia*, 10 A.3d 1141, 1146 (D.C. 2011) (quoting *Cook v. Edgewood Mgmt. Corp.*, 825 A.2d 939, 946 (D.C. 2003)), as well as the evolution of the statutory language throughout the statute's legislative history, *see District of Columbia v. Reid*, 104 A.3d 859, 868 (D.C. 2014) (explaining that because "our task is to search for an interpretation that makes sense of the statute as a whole," we may  "turn to legislative history to determine whether our interpretation is consistent with legislative intent" (quoting *Cass v. District of Columbia*, 829 A.2d 480, 482 (D.C. 2003))).   Bearing in mind that "a prime purpose of Congress in formulating the District of Columbia Elections law was to keep the franchise open to as many people as possible," we interpret  our election laws "in an inclusive spirit" unless presented with a "compelling reason" to

do otherwise. *Lawrence v. D.C. Bd. of Elections & Ethics*, 611 A.2d 529, 532-33 (D.C. 1992) (internal quotation marks omitted).[5]

Mr. McDuffie argues before this court as he did before the Board that he is experientially eligible to seek the office of Attorney General under the plain language of § 1-301.83(a)(5)(D) because either: (1) he is a licensed attorney in active status and, separately, is employed by the District of Columbia in the District of Columbia; or (2) he is a licensed attorney and, although not employed by the District as such, is "actively engaged" in legal work for the District in his capacity as a Councilmember. We consider both of these arguments.

## A. Mr. McDuffie's Experiential Eligibility Based on His Status as a Licensed Attorney and His Non-Attorney Employment by the District

The statute plainly does not support Mr. McDuffie's reading that he is experientially eligible to run for the office of Attorney General solely because he is

---

[5] This interpretive canon does not, as Mr. McDuffie argues by relying on cases from other jurisdictions, operate as a factual "presumption" that he or any other individual candidate is eligible under a statute or gets the "benefit of the doubt" regarding their eligibility. Rather, as reflected in this court's case law, this canon instructs us to be "mindful . . . that any decision in this area affects . . . the voters as a whole" and directs us to read the statute to the extent reasonably possible so as to maximize voters' range of choices. *Lawrence*, 611 A.2d at 532.

a licensed attorney and works (albeit not as an attorney) for the District. Preliminarily, allowing an individual to serve as Attorney General simply because they are a licensed attorney and work in a non-attorney capacity for the District—for example, as a school nurse or an IT expert—does not serve the aim of adding an experiential requirement to the minimum qualifications for the office. *See Tippett v. Daly*, 10 A.3d 1123, 1132 (D.C. 2010) (rejecting a proposed interpretation that "would serve none of the Act's . . . purposes"). While Mr. McDuffie argues that the Board's interpretation would lead to absurd results because it would exclude someone like him whose work is intimately intertwined with D.C. law and yet include, for example, a "white shoe" attorney practicing international law who knows nothing about the District's laws, Mr. McDuffie's own interpretation would do nothing to right that "wrong" and would bring the additional imbalances mentioned above into the fold. Moreover, this understanding of § 1-301.83(a)(5)(D) would render the language "actively engaged . . . as" meaningless, thus running afoul of our obligation to read the statute in a way that gives all of its words meaning. *See Sch. St. Assocs. Ltd. v. District of Columbia*, 764 A.2d 798, 807 (D.C. 2001) (en banc).

To the extent Mr. McDuffie argues that "actively engaged" means only that his bar membership must be "in active status," we cannot agree for three reasons.

First, as discussed above, the statute already contains separate provisions addressing bar membership; it specifically requires someone to be "in good standing," D.C. Code § 1-301.83(a)(3), (4), but does not mention the need to be in "active" status (as opposed to the other statuses[6]). It would be odd then to add an "active" status requirement elsewhere in the statute outside the bar membership provision. Second, the clause "actively engaged . . . as" is not reasonably interpreted to reference "active status" vis-a-vis bar membership in any event. The "actively engaged" clause precedes all the other options for experiential eligibility—attorney in the practice of law, judge, and law professor—but judges, for example, have their own class of "judicial" membership, separate from "active status." See *supra* note 6. Third, it is unclear what being in "active status" would add to a candidate's qualifications. In many circumstances, all that a member in good standing must do to be in the "active"

---

[6] D.C. Bar R. II, § 4 recognizes three categories of membership: "active," "judicial," and "inactive." Inactive members are "limited to those persons who are eligible for active membership but are not engaged in the practice of law in the District of Columbia and have filed with the Secretary of the Bar written notice requesting enrollment in the class of inactive members." *Id.* Judicial members are "[j]udges of courts of record, full-time court commissioners, U.S. bankruptcy judges, U.S. magistrate judges, other persons who perform a judicial function on an exclusive basis, in an official capacity created by federal or state statute or by administrative agency rule," as well as "retired judges who are eligible for temporary judicial assignment, and are not engaged in the practice of law," but "if a member's terms and conditions of employment require that he or she be eligible to practice law, then the member may choose to be an active member," instead of a judicial member. *Id.*

rather than "inactive" class is ask in writing and pay an additional fee. *Id.*

Accordingly, we understand "actively engaged" in subsections (a)(5)(A) through (D)

to refer in some way to professional activity, not merely to the possession of an

"active" D.C. Bar license. *See Tippett*, 10 A.3d at 1127 ("We consider not only the

bare meaning of the word but also its placement and purpose in the statutory

scheme." (internal quotation marks omitted)).

### B.    Mr. McDuffie's Experiential Eligibility Based on His Status as a Licensed Attorney and His "Active Engagement" in Legal Work for the District

We thus confront the question whether the experiential eligibility criterion of

"active[] engage[ment] . . . as . . . [a]n attorney employed in the District of Columbia

by the United States or the District of Columbia" can refer to an individual's use of

their legal skills and training in a non-attorney job, such as that of a Councilmember,[7]

or whether it requires that the individual be employed as an attorney.  Mr. McDuffie

cites standard and legal dictionary definitions to support the former interpretation:

"*Engaged*, Merriam-Webster Online Dictionary ('involved in activity')" and

---

[7] Although some Councilmembers are trained and have worked as lawyers, there are no statutory experiential requirements to become a Councilmember; by design, the office is open to individuals from all walks of life. *See* D.C. Code § 1-204.02.

"*Engage*, Black's Law Dictionary (11th ed. 2019) ('To employ or involve oneself; to take part in; to embark on.').'" Particularly when considered in conjunction with the rest of the statutory phrase "as . . . [a]n attorney," these definitions provide little clarity. We conclude that on this point the statute is ambiguous and seek to interpret this text "in a manner that makes sense of the statute as a whole by reference to legislative history and other aids to construction." *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1235 (D.C. 2016) (internal quotation marks omitted) (resorting to established tools of statutory interpretation when the "[l]ack[] [of] a statutory definition [or] clear dictionary definition . . . le[ft the court] with textual uncertainty" (internal quotation marks omitted)).

The history of D.C. Code § 1-301.83, discussed above in Part II, shows that the reference to "an attorney employed in the District of Columbia by the United States or the District of Columbia" was originally in both the bar membership and experiential provisions of the bill. The former identified a group of lawyers—law professors and government attorneys—who, so long as they were employed "in such capacity," were not required to satisfy long-term D.C. Bar membership requirements; the latter established that these same law professors and government attorneys, along with practicing attorneys and judges, would have the requisite work experience. As Mr. McDuffie agreed at oral argument, employment "in such

capacity" in the bar membership provision of this bill, which referred back to the phrase "professor of law . . . or . . . an attorney employed . . . by . . . the District of Columbia," indicated that the individual had to be employed for a certain amount of time in their capacity *as* a law professor or *as an attorney* to be permitted to fulfill the bar membership provision in a different way. There is no reason to think that the same phrase in the same bill was imbued with a different meaning in the experiential provision when it listed these same professions as qualifying work experience. *See Brown v. Gardner*, 513 U.S. 115, 118-19 (1994) (employing the "presumption that a given term is used to mean the same thing throughout a statute"). Nor is there any reason to think that the meaning of this same phrase changed when, in the successor bill that became law, the Council opted to require five years of D.C. Bar membership in good standing without exception and made no change to the experiential provision. *See Reid*, 104 A.3d at 868; *Bolz v. District of Columbia*, 149 A.3d 1130, 1138 (D.C. 2016) (interpreting a codified phrase in light of a previous version of legislation where there is "no indication that this alteration was intended to change the meaning").

The history of a different statute which the Council expressly invoked as a model, D.C. Code § 1-204.33(b)(2), see *supra* note 3, also supports an interpretation of § 1-301.83(a)(5)(D) that requires a would-be Attorney General candidate to be

employed as an attorney. Section 1-204.33(b)(2) allows an individual to fulfill the experiential requirements to be a judge if they have "been employed as a lawyer by the United States or the District of Columbia government" for the necessary time, and Mr. McDuffie argues that the difference in language implies the legislature knew how to specify "employ[ment] as a lawyer" for Attorneys General if it had wanted and yet did not do so here. But the evolution of § 1-204.33(b)(2) indicates the two phrases—"has been actively engaged . . . as . . . [a]n attorney employed . . . by . . . the District of Columbia" and "has been employed as a lawyer by . . . the District of Columbia"—are synonymous because the Council replaced the former phrase with the latter in the current judge statute seemingly without controversy. *See* D.C. Code § 11-1501(b)(3) (original language superseded by § 1-204.33(b)(2)), H.R. Rep. No. 93-703, at 77-78 (1973) (Conf. Rep.) (mentioning the residency requirement but not others in describing conference committee changes in the bill that ultimately passed); H.R. Rep. No. 93-482, at 25 (1973) (mentioning the bar requirement without detail in describing this earlier version of the bill); *see also* S. Rep. No. 93-219, at 6-7 (1973) (making no mention of judge qualifications).[8]

---

[8] To any rejoinder that the Council did not make a similar substitution in the Attorney General statute, we note that it would not have been easy to do so without restructuring § 1-301.83(a).

Further, to be "actively engaged . . . as . . . [a]n attorney employed in the District of Columbia by . . . the District of Columbia" under D.C. Code § 1-301.83(a)(5)(D) is most reasonably read to impose a bright-line requirement that an individual be employed by the District in an attorney role, that is, one for which membership in a bar is required. The alternative—which Mr. McDuffie advocates— would be to interpret the statute to require the Board to engage in a functional equivalence assessment that would inject arbitrariness into the experiential requirements of the statute without any indication, textual or otherwise, that the Council intended to delegate such discretion to the Board. *See In re Settles*, 218 A.3d 235, 243 (D.C. 2019) (considering as relevant the potential "practical problems" and "uncertainty" of one interpretation of a statute); *S. Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 457 (1979) (concluding that "Congress intended no such result" in light of the "[t]he disruptive practical consequences" of the proffered interpretation of a statute); *cf. Unum Life Ins. Co. of Am. v. District of Columbia*, 238 A.3d 222, 232 (D.C. 2020) (in evaluating whether the legislature properly delegated power to its agencies, we look to "the statutory scheme as a whole, including the purposes articulated by the legislature, limits [if any] placed on the delegation, and any guidance given to the agency").

Interpreting "actively engaged . . . as . . . [a]n attorney" to depend on whether

an individual performs work functionally equivalent to that of an attorney would require an examination of evidence of someone's day-to-day duties and would lead to difficult questions of how the nature of such work could objectively be evaluated or what the quantum of qualifying work would be: would the person have to be engaged in such work close to 100% of their time, more than 50%, or would some lesser amount suffice?  And because "actively engaged" precedes all four experiential categories, not just subsection (D), it would inject similar uncertainty into each provision, forcing the Board to decide what day-to-day tasks qualify and how much of each is needed to be the functional equivalent of a practicing attorney, a judge, or a law professor.  Meanwhile, nothing in the statute's text provides any guidance for how to answer these questions.  And the parties have not pointed out to us, nor have we found, anything in the statute's text or history indicating either that the Council appreciated this line-drawing problem or that it intended to leave such open-ended questions for the Board to determine on a case-by-case basis, particularly under the time constraints under which these questions will arise.  *See* D.C. Code § 1-1001.08(o)(2) (requiring the Board to "determine the validity of the challenged nominating petition not more than 20 days after the challenge has been filed").  Where it does not appear that the legislature understood that it was creating anything other than a bright-line criterion, we decline to inject uncertainty into the statute.  *See Tenants of 738 Longfellow St., N.W. v. D.C. Rental Hous. Comm'n*, 575

A.2d 1205, 1213 (D.C. 1990) (explaining that we should not create interpretations that will force agency action out-of-step with its governing statute).

Interpreting D.C. Code § 1-301.83(a)(5)(D) to impose a bright-line requirement that an individual be employed by the District in an attorney role also maintains the distinctions between each subsection of the experiential provision. *See D.C. Bd. of Elections & Ethics v. District of Columbia*, 866 A.2d 788, 795 (D.C. 2005) (explaining that the court should avoid interpretations that create superfluity). To be sure, there will be some overlap between attorneys who have been "actively engaged . . . in the practice of law" in the District under (A)—i.e., an attorney engaged by a client to perform legal services[9]—and those who are employed in positions requiring bar membership by the District or United States government under (D). But contrary to Mr. McDuffie's arguments, there are a number of United States and District government jobs that require an individual to be a licensed

---

[9] We rely on the Board's definition of an attorney "actively engaged . . . in the practice of law" in the absence of any objection from Mr. McDuffie. *See also* D.C. App. R. 49(b) (defining practice of law). Although Mr. McDuffie also cites to Black's Law Dictionary to define "practice of law," its definition is unhelpful in its circularity—the initial defining phrase is "[t]he professional work of a lawyer"— and would also include drafting legislation, which Mr. McDuffie has conceded would not be practice of law and could not be without implicating his non-licensed colleagues in unauthorized practice. *See Practice of Law*, Black's Law Dictionary (11th ed. 2019).

attorney but do not appear to involve practicing law, as evidenced by publicly available job postings at the time of this writing.[10]

We acknowledge that a number of the Councilmembers[11] who enacted the 2009 bill have submitted an amicus brief indicating that they intended to delegate such line-drawing to the Board. But we cannot give dispositive weight to their assertions of their memory of their intent. The canons of statutory interpretation on which this court relies to discern legislative intent require us to look to the text of the statute and explanations of that text, in particular contemporary ones, by

---

[10] *See, e.g.*, *Deputy Staff Counsel*, *District of Columbia Courts*, USAJOBS, https://www.usajobs.gov/job/738123300; https://perma.cc/7T4A-MV5C; *Deputy Clerk of the Superior Court*, *District of Columbia Courts*, USAJOBS, https://www.usajobs.gov/job/740778300; https://perma.cc/RJA5-TEB3; *Program Manager (Abuse and Neglect)*, *District of Columbia Courts*, USAJOBS, https://www.usajobs.gov/job/740176800; https://perma.cc/28XJ-WP8F; *Clerk of Court*, *U.S. Tax Court*, USAJOBS, https://www.usajobs.gov/job/730781500; https://perma.cc/C8LK-DTZ9; *Senior Legal Administrator for Trademarks Technology and Systems*, *U.S. Patent and Trademark Office*, USAJOBS, https://www.usajobs.gov/job/728253800; https://perma.cc/QHF9-7V7N; *Deputy Special Master (Claims Manager)*, *U.S. Dep't of Justice*, USAJOBS, https://www.usajobs.gov/job/730688000; https://perma.cc/96JK-KFDM. Links last accessed August 2, 2023.

[11] Amici include eight of the 12 Councilmembers who voted in favor of the bill (two of the 12 have passed away; one voted against). *See Bill No. 18-65*, Council of the District of Columbia (Feb. 2, 2010), https://lims.dccouncil.gov/Legislation/B18-0065; https://perma.cc/BXX4-PYW4 (click on "View Voting Details" for Feb. 2, 2010 Final Reading). Two of the group continue to serve on the Council; six are former Councilmembers. They filed in their individual capacities and were not represented by government counsel.

legislators acting in their legislative role; they do not permit us to incorporate into statutory analysis post-hoc explanations in an amici brief filed by individuals who served as legislators when the legislation was enacted regarding scenarios there is no indication they contemplated at the time. *See Barber v. Thomas*, 560 U.S. 474, 486 (2010) ("[T]he Court normally gives little weight to statements, such as those of the individual legislators, made *after* the bill in question has become law."); *accord Heintz v. Jenkins*, 514 U.S. 291, 298 (1995) (rejecting such a statement made later in the year of the act's passage because it was "not a statement upon which other legislators might have relied in voting"); *D.C. Appleseed Ctr. for L. & Just., Inc. v. D.C. Dep't of Ins., Sec., & Banking*, 54 A.3d 1188, 1214 (D.C. 2012) (recognizing that the "principal author of the legislation" at issue filed an amicus brief but relying on her official record statements at the time of consideration of the bill).[12] To do otherwise would give this court unwarranted power to accord a

---

[12] Mr. McDuffie directs our attention to *Cannon v. University of Chicago*, 441 U.S. 677, 686 n.7 (1979) (interpreting Title IX to allow a private right of action), in which the U.S. Supreme Court cited post-enactment legislator statements. But these citations were in the Court's procedural history discussion and dealt with the evolution of subsequent related civil rights legislation premised upon on-the-record, congressional understandings about Title IX itself. *See id.* Even so, these remarks ultimately carried little weight. *Id.* (noting that the Court could not "accord these remarks the weight of contemporary legislative history"); *see id.* at 702 (after examining the statute's text, noting only the general assumption "before 1972 and since," among all three branches of government and the general public that Title IX provided a private right of action).

meaning to a statute that neither a past nor a current legislature has officially expressed. Accordingly, we must interpret § 1-301.83(a)(5)(D) as it was written based on official records that reflect contemporaneous understandings of the statute.

Lastly, although mindful of the canon of statutory construction that election laws should be interpreted "in an inclusive spirit," *Lawrence*, 611 A.2d at 532, this "spirit" is not meant to undermine "the importance of reasonable regulatory provisions that are aimed, for example, at ensuring candidate eligibility." *Best v. D.C. Bd. of Elections & Ethics*, 852 A.2d 915, 919 (D.C. 2004). Unlike *Lawrence*, where the court was faced with a legal concept that the Board had construed broadly and was presented with no "compelling reason" to construe it otherwise, *see* 611 A.2d at 532, here we are interpreting a statute expressly intended to "strengthen the position of Attorney General through the establishment of minimum qualifications and a term of service," Comm. Rep. at 2, and we conclude that strong countervailing considerations, detailed above, weigh in favor of reading this provision to require actual employment in a position for which membership in a bar is a condition.

## IV. Conclusion

Having concluded that D.C. Code § 1-301.83(a)(5)(D) requires that an

individual be employed as a government attorney to be "actively engaged" as one under the statute, we affirm the Board's decision that Mr. McDuffie was not experientially eligible. We do not doubt that Mr. McDuffie's legal training, skill, and experience inform how he approaches the job. Nevertheless the job itself cannot be defined as an attorney role. As noted above, *supra* note 7, Councilmembers are by definition not required to be attorneys and they perform distinctly legislative work. This work deserves the utmost respect, and we do not mean to imply with this opinion that we have a normative or policy view regarding the eligibility of Councilmembers to run for the office of Attorney General. But if the Council desires Councilmembers to be experientially eligible based on their work as such, it must legislate this result. For the reasons discussed above, we do not understand this to be either what the statute plainly says or how the statute can reasonably be inclusively interpreted.

*So ordered*.